UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| JEREMY JOHN HALGAT, an individual | Case No. 2:22-cv-00592-ART-EJY |
|---|---|
| Plaintiff, | Order Granting Motion to Dismiss (ECF No. 71) |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Plaintiff, Jeremy John Halgat, brings this action against the United States of America under the Federal Tort Claims Act (FTCA) for alleged misconduct occurring during his prosecution. Plaintiff brings the following causes of action: 1) violation of the Due Process Clause of the Fifth Amendment; 2) intentional infliction of emotional distress (IIED); 3) malicious and vindictive prosecution; 4) abuse of process; and 5) negligence. Before the Court is Defendant's Motion to Dismiss (ECF No. 71.)

**I.    BACKGROUND**

Plaintiff alleges the following. On September 23, 2011, a shooting occurred at the Nugget Casino in Sparks, Nevada after an altercation between alleged Vagos MC members and the Hells Angels Motorcycle Club, which resulted in the death of Hells Angels Motorcycle Club member Jethro Pettigrew. (ECF No. 69 at ¶ 16.) On November 15, 2011, Gary Rudnick was arrested and charged with First Degree Murder with Use of a Deadly Weapon for his involvement in the September 23, 2011, incident at the Nugget Casino. (*Id.* at ¶ 18.) On January 5, 2012, Rudnick told investigators that Vagos MC international leadership ordered the killing of Pettigrew. (*Id.* at ¶ 19.) On March 16, 2012, Scott Rivera, an alleged member of the Vagos MC, told investigators that he was not aware of any prior

plans to kill Pettigrew. (*Id.* at ¶ 21.) On July 22, 2013, Ernesto Gonzalez, an alleged Vagos MC member, was tried for Pettigrew's murder, and Rudnick allegedly provided a different account of who was at the meeting where the hit was ordered from what he had told investigators. (*Id.* at ¶ 23.) Another Vagos MC member, Jefferson Martin, told investigators that there was no plan to murder Pettigrew. (*Id.* at ¶¶ 27-28.) On December 31, 2015, the Nevada Supreme Court reversed Gonzalez's conviction and stated that Rudnick's testimony was uncorroborated by other witnesses or evidence. (*Id.* at ¶ 30.)

Various government witnesses allegedly changed their testimony about whether there was a hit on Pettigrew. David Karpel, who at the time was a U.S. Department of Justice Trial Attorney with the Organized Crime and Gang Section, met with Rudnick on February 10, 2016, to discuss who attended the alleged meeting. (*Id.* at ¶ 31.) On March 17, 2016, Rudnick allegedly told Gonzalez's investigator, April Higuera, that there was no conspiracy to murder Pettigrew and that it was just a bar fight that went bad. (*Id.* at ¶ 32.) On March 5, 2017, after meeting with Karpel and joint task force officers, Martin alleged a conspiracy existed but changed the names of the individuals at the meeting. (*Id.* at ¶ 38.) On March 14, 2017, Rivera stated that there was a "green light" to kill any Hells Angels members and that there was also a side meeting after he met with Karpel and joint task force members. (*Id.* at ¶ 39.) On March 18, 2017, Karpel was informed that Rudnick had told different stories and recanted. (*Id.* at ¶ 40.) Karpel had Rudnick, Rivera, and Martin testify before a grand jury where Karpel allegedly prompted them to answer that certain members had been at the meeting where a hit on Pettigrew was ordered. (*Id.* at ¶ 42.)

Plaintiff, along with twenty-two co-defendants, were indicted for violating the Racketeer Influenced and Corrupt Organizations Act (RICO). (*Id.* at ¶ 10.) Plaintiff alleges that Karpel "was directly responsible for bringing and signing the RICO Indictment[.]" (*Id.*) He also allegedly met with government witnesses Gary

Rudnick, Jefferson, and Martin, and Scott Rivera prior to them testifying before the grand jury on June 7, 2017. (*Id.* at ¶ 11.) The government allegedly knowingly elicited false testimony to secure the indictment. (*Id.* at ¶ 12.) Allegedly, Martin had told the government he felt pressure from Karpel to lie to law enforcement. (*Id.* at ¶¶ 49, 57.) The government was also able to secure the indictment based on evidence obtained through an undercover sting operation (Operation Pure Luck) that included agents Arboreen, Brancato, and Wear. (*Id.* at ¶ 14.)

On June 16, 2017, Plaintiff was arrested in Las Vegas, Nevada. (*Id.* at ¶ 46.) He was released on a personal recognizance bond on June 19, 2017, and was required to wear a GPS monitor until his case was fully dismissed on June 12, 2020. (*Id.*) On February 24, 2020, a jury acquitted all defendants in Trial Group 1 of the RICO indictment, which did not include Halgat. (*Id.* at ¶ 59.) On March 16, 2020, co-defendant Jeffrey Voll's defense attorney filed a Motion to Dismiss the Superseding Indictment, and in response the government dismissed Count 1 against Halgat and other co-defendants. (*Id.* at ¶ 60.) On April 8, 2020, Judge Gloria M. Navarro signed an order dismissing Count 1 in the superseding indictment, and on June 12, 2020, she signed an order dismissing the remaining counts against Halgat. (*Id.* at ¶ 62.) On April 7, 2022, Plaintiff filed the present action. (ECF No. 1.) On August 16, 2022, Plaintiff voluntarily dismissed the Washoe County Sheriffs Department. (ECF No. 22.) On August 20, 2022, Plaintiff voluntarily dismissed the Los Angeles County Sheriffs Department. (ECF No. 26.) On March 22, 2023, Plaintiff voluntarily dismissed Karpel, Arboreen, Brancato, and Wear. (ECF No. 59.)

## II.    LEGAL STANDARD

A court must dismiss a complaint if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556).

At the pleading stage, *Twombly* and *Iqbal* "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*. 550 U.S. at 556. Under *Twombly* and *Iqbal*, "[a] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Then, the court should assume the veracity of well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### III. DISCUSSION

#### A. Fifth Amendment Due Process Clause Claim

As an initial matter, Plaintiff concedes that he cannot bring his Fifth Amendment Due Process Clause claim. (ECF No. 83 at 11.) Thus, the Court will dismiss this claim.

#### B. Sovereign Immunity

Sovereign immunity shields the government from lawsuits unless it has consented. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Such consent must be "unequivocally expressed in the text of a relevant statute." *Donovan v. Vance,* 70 F.4th 1167, 1172 (9th Cir. 2023) (citations omitted). "Under 28 U.S.C. § 2680(h), the United States is not liable for '[a]ny claim arising out of…malicious prosecution, abuse of process," and certain other intentional torts, unless committed by "investigative or law enforcement officers of the United States Government.'" *Manansingh v. United States*, No. 21-16192, 2023 WL 7295184, at *2 (9th Cir.

Nov. 6, 2023). However, the exception does not apply to prosecutors. *Id.* (defining "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law"); *see also Manansingh v. United States*, No. 21-16192, 2023 WL 7295184, at *2 (9th Cir. Mar. 28, 2023) ("Federal prosecutors do not qualify as 'investigative or law enforcement officers.'"); *Wright v. United States*, 719 F.2d 1032, 1034 (9th Cir. 1983), *abrogated on other grounds as recognized by Gasho v. United States*, 39 F.3d 1420 (9th Cir. 1994) (finding that a malicious prosecution claim concerning conduct by federal officials could only proceed against an IRS agent but not a prosecutor because only the IRS agent was an investigative or law enforcement officer).

Sovereign immunity shields the United States from this lawsuit. While Plaintiff discusses multiple federal actors in his amended complaint, his malicious prosecution and abuse of process claims are solely based on the conduct of Karpel, who at the time was a U.S. Department of Justice Trial Attorney with the Organized Crime and Gang Section. (ECF No. 69 at ¶ 26.) In the section of the complaint discussing the malicious prosecution cause of action, Plaintiff alleges that Karpel, along with Officer Arboreen, ATF Task Force Officer Brancato, and agent Wear presented recanted testimony and material representations to the Grand Juries to secure the indictments against Plaintiff and his co-defendants (*Id.* at ¶ 90) but fails to explain how Arboreen, Brancato, and Wear played any role in choosing whom to indict or what evidence to present to the grand jury, both decisions normally made by the prosecutor. Similarly, Plaintiff mentions Arboreen, Brancato, and Wear when pleading abuse of process (*Id.* at ¶ 99), but the main allegations concern Karpel allegedly using fabricated evidence, recanted testimony, lies, and materially misleading statements to secure the indictments. (*Id.* at ¶ 100.) Because the United States has not consented to suit based on prosecutorial conduct, Plaintiff cannot bring his

malicious prosecution or abuse of process claims.

Plaintiff also cannot bring his remaining claims for IIED and negligence because these claims are based on the same conduct allegedly constituting abuse of process and malicious prosecution. A court should look beyond labels when determining whether the intentional tort exception applies to a claim. *Thomas-Lazear v. Fed. Bureau of Investigation*, 851 F.2d 1202, 1207 (9th Cir. 1988). The court should focus its inquiry "on whether conduct that constitutes an enumerated tort is 'essential' to a plaintiff's claim." *Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996) (internal citations omitted).

Here, Plaintiff's IIED alleges that Defendant is liable for IIED because Karpel, Arboreen, Brancato, and Wear committed "extreme and outrageous acts with the intent to indict Plaintiff and his co-defendants and inflict severe mental and emotional distress upon Plaintiff and his co-defendants." (ECF No. 69 at ¶ 83.) While Plaintiff names other parties, this claim clearly derives solely from Karpel's alleged conduct forming the basis of his malicious prosecution claim, specifically his actions to indict Plaintiff and his co-defendants. *See Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976) (explaining that prosecutors must decide "questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present."). Thus, the claim is barred because it is based on prosecutorial activity and relies on the malicious prosecution claim.

Plaintiff's negligence claim is also barred. Plaintiff alleges that Karpel, Arboreen, Brancato, and Wear violated their "duty of care to avoid causing unnecessary distress to persons through their making of arrests, indictments, and prosecution." (ECF No. 69 at ¶ 107.) Plaintiff claims that they relied on fabricated evidence, recanted testimony, and material representations to indict Plaintiff and "commenc[e] an illegal and malicious prosecution of Plaintiff." (*Id.*)

6

1 Thus, the malicious prosecution and abuse of process claims are essential to the
2 negligence claim, and the negligence claim is based on prosecutorial conduct. As
3 such, the Court will dismiss this claim.

### C. Discretionary Function Exception

Plaintiff's claims are also barred by the discretionary function exception. The discretionary function exception bars "[a]ny claim…based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). In determining whether the discretionary function exception applies, courts first "ask whether the challenged action involves 'an element of judgment or choice.'" *Sabow*, 93 F.3d at 1451 (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). "If the challenged actions involve an element of choice or judgment, [the court] must determine 'whether that judgment is one of the kind that the discretionary function was designed to shield.'" *Id.* (quoting *Gaubert*, 499 U.S. at 322-23). The conduct must have a legitimate policy rationale. *Id.* at 1454. "While the burden of proving the *Gaubert* factors ultimately falls on the sovereign entity asserting the discretionary function exception, 'a plaintiff must advance a claim that is facially outside the discretionary function exception in order to survive a motion to dismiss.'" *Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) (quoting *Prescott v. United States*, 973 F.2d 696, 702 & n.4 (9th Cir. 1992)).

The discretionary function exception applies to Plaintiff's claims. Because all of Plaintiff's claims are related to the decision to prosecute Plaintiff, they involved "an element of choice or judgment…that the discretionary function was designed to shield." *See Wright*, 719 F.2d at 1035 (citing *Smith v. United States*, 375 F.2d 243 (5th Cir. 1967), *cert. denied*, 389 U.S. 841 (1967)) ("The decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability.").

7

In addition, the discretionary function exception bars Plaintiff's claims insofar as they are based on alleged investigative misconduct. "The investigation of crime involves policy judgments at the core of the executive branch." *Gonzalez v. U.S.*, 814 F.2d 1022, 1032 (9th Cir. 2016). Thus, courts presume actions connected to criminal investigations are grounded in a legitimate policy rationale. *Nieves Martinez v. United States*, 997 F.3d 867, 880 (9th Cir. 2021) (citing *Gonzalez*, 814 F.3d at 1028, 1032). However, the discretionary function exception "does not apply to law enforcement investigations when a federal employee's tactics during an investigation had 'no legitimate policy rationale.'" *Id.* at 881 (9th Cir. 2021) (quoting *Sabow*, 93 F.3d at 1454). The Ninth Circuit has found that there was a policy rationale for a border control agent's threat that the family of an individual under investigation could face 15 to 30 years of incarceration, even though it "may have been negligent and even abusive," because it "was furthering an investigation meant to reduce the illegal transfer of drugs across the border."

Here, the government agents were investigating the scope of a potential scope of a criminal conspiracy to commit murder, and Plaintiff cannot identify any specific actions undertaken by the government agents that was improper, so the discretionary function exception applies. Since Plaintiff's claims are not facially outside the discretionary function exception, the exception applies to Plaintiff's claims.

### a. Leave to Amend

The Court will not grant Plaintiff leave to amend. Because Plaintiff's claims are barred by sovereign immunity, amendment would be futile. *See Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 766 (9th Cir. 2018) (citing *Mitchell*, 463 U.S. 206 at 212) ("a suit dismissed on sovereign immunity grounds cannot be salvaged.").

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases

1  and determines that they do not warrant discussion as they do not affect the
2  outcome of the issues before the Court.
3  It is therefore ordered that Defendant's Motion to Dismiss (ECF No. 71) is
4  granted.
5  It is further ordered that Plaintiff's Motion to Extend Time (ECF No. 81) is
6  denied as moot.
7  It is further ordered that the Clerk of Court close this case and enter judgment
8  in favor of Defendant.

DATED THIS 29th day of March 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE